Dennis SULLIVAN
and Diane K. Sullivan,
*Respondents,*

*v.*

William SAENGER
and Marianne Saenger;
Alemania Investment Co.;
and A.I.D.A. Investment Co.,
*Appellants.*

Dennis SULLIVAN
and Diane K. Sullivan,
*Plaintiffs,*

*v.*

Clarence BARNETT
and Lila Barnett;
William Saenger and Marianne Saenger;
Alemania Investment Co.;
and A.I.D.A. Investment Co.,
*Defendants.*

(90-3935-L-3 and 92-3367-L-2; CA A90514)

952 P2d 95

Dale L. Crandall argued the cause and filed the briefs for appellants.

Eugene J. Piazza argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendants appeal from a judgment that quiets title to real property in plaintiffs. Defendants Alemania Investment Company (Alemania) and A.I.D.A. Investment Company (AIDA) assign error to the denial of their motion to dismiss for insufficient evidence at the close of the evidence.[1] Defendants William and Marianne Saenger assign error to the imposition of sanctions that arise out of their refusal to comply with a pretrial discovery order under ORCP 46. Part of the sanction was an award of attorney fees from which all defendants appeal. We review *de novo* and affirm except on the award of attorney fees.

The evidence shows that Alemania, an offshore trust located in the British West Indies, was created in 1982. Saengers were appointed as its officers and denominated as its agents. According to the evidence, offshore trusts similar to Alemania are known by the Internal Revenue Service (IRS) as tax avoidance devices used to disguise ownership of assets subject to tax liens. At the time that Alemania was created, the Saengers owned property at 5700 Sterling Creek Road in Jackson County, which they used as their residence after 1994. The property consisted of a house, a barn and 16 acres of land. There is in evidence a quitclaim deed from Saengers to Alemania for the Jackson County property that shows a date of execution in 1984 and consideration of $10. The deed was not recorded until October 14, 1986.

AIDA, another trust located in the British West Indies, was created in May 1986. On September 17, 1986, the IRS recorded a Notice of Federal Tax Lien to secure delinquent federal income taxes owing for the year 1982 against Marianne Saenger that affected the title to the Jackson County property. Also, on October 14, 1986, Alemania recorded a trust deed from AIDA, which used the Jackson County property as security and purported to evidence a $175,000 loan from AIDA to Alemania. The trust deed was executed by the Saengers as officers of Alemania.

---

[1] Although Alemania and AIDA do not identify the rule on which their motion is based, we consider their motion to have been made under ORCP 54 B(2) for purposes of review.

In the meantime, other property that was owned by the Saengers in California was conveyed to a third offshore trust known as Sage. In August 1986, Sage deeded the California property to Gertrude Schuttler dba AIDA Investment Company. On the same day, Schuttler gave Saengers a general power of attorney to act on Schuttler's behalf.

In 1987, William Saenger entered into an agreement with a real estate agent for the agent to act on behalf of Saenger in order to rent the Jackson County property to a third party. The property was rented, and after the tenant terminated the rental agreement, Saenger sued the real estate agent in an attempt to recover damages arising out of the lease. In July 1989, AIDA entered into a rental agreement with William Saenger in which Saenger agreed to make certain repairs to the Jackson County property and to pay property taxes for the property in exchange for the use of the property. In March 1992, William Saenger, as agent of Alemania, leased the property again to third parties.[2] Alemania purportedly defaulted on the loan from AIDA, and in October 1992, conveyed the property to AIDA in exchange for the cancellation of the debt secured by the trust deed.

In 1990, the IRS levied on the Jackson County property, seized it and conducted a sealed bid sale in an effort to collect $1,236,538 of past due federal income taxes owed by "Alemania Investment Co. (Nominee), Gertrud Schutter, dba AIDA Investment Co., Both Nominees of William & Marianne Saenger, 5700 Sterling Creek Road, Jacksonville, OR." The IRS mailed notices of the seizure of the property and of the forthcoming sealed bid sale to Alemania and AIDA as nominees and alter egos of the Saengers to the 5700 Sterling Creek Road address.

The sale was conducted on August 31, 1990, and plaintiffs were the highest bidders. After the statutorily prescribed redemption period had passed without an attempt to redeem, the IRS District Director gave plaintiffs a quitclaim deed to the property. Following the sale, plaintiffs filed an FED action against the Saengers to gain possession of the

---

[2] The new tenants were defendants Barnett, who have been dismissed from this case as party defendants.

property. The Saengers impled the United States as a party, and the case was removed to federal district court. There, after it was determined that there were no procedural irregularities as between the IRS and the Saengers, the case was remanded back to the trial court to resolve the pendent state issues.

Back in state court, plaintiffs for the first time joined Alemania and AIDA as parties and added a claim to quiet title to the property. In their amended complaint, they alleged that they received title by virtue of an IRS deed that conveyed

"all right, title and interest of defendant Alemania Investment Co., *as nominee/alter-ego* of William and Marianne Saenger; defendant A.I.D.A. Investment Co., *as nominee/ alter-ego* of William and Marianne Saenger; and, defendants William and Marianne Saenger." (Emphasis supplied.)

At the trial on the FED and quiet title claims, no representative of AIDA or Alemania testified nor did Saengers testify. The only evidence that they offered consisted of federal tax returns filed by AIDA in 1990 after the IRS commenced the assessment and levy procedure but before the seizure of the property actually occurred. The returns reflected that the trust had an address outside of the IRS district in which the seizure was made. At the conclusion of the trial to the court, AIDA and Alemania moved to dismiss the action on the grounds that there was insufficient evidence to prove that they received notice[3] of either the IRS seizure or of the sale of the property in compliance with 26 USC § 6335(a) and (b),[4] and as required by the Fifth Amendment to the

---

[3] The Saengers do not contest the adequacy of the notice that they received.

[4] 26 USC § 6335 provides, in part:

"(a) As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property * * * or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address. * * *

"(b) The Secretary shall as soon as practicable after the seizure of the property give notice to the owner, in the manner prescribed in subsection (a), and shall cause a notification to be published in some newspaper published or generally circulated within the county wherein such seizure was is made * * *."

United States Constitution. Alemania and AIDA maintained that because they did not have a dwelling or place of business in the IRS district in which the seizure occurred, the IRS was required to mail them notice at their last known addresses, which were outside the United States. Therefore, according to them, the notices sent to the Jackson County address were invalid, and the IRS never acquired title to the property. Consequently, the IRS could not have conveyed good title to plaintiffs as against Alemania and AIDA.

In its findings and conclusions, the trial court determined that

> "the action of the Saengers in creating and using Alemania and A.I.D.A. are consistent only with the conclusion that the Saengers created A.I.D.A. for the purpose of tax fraud and that these entities are, and have been since created, the nominees/alter egos of the Saengers."

Based on that determination, the court concluded:

> "[T]he contention that notice was required to be given other than to the Saengers, to properly notify Alemania and A.I.D.A., fails and is without merit since, the Court has found, as a matter of fact, the defendants A.I.D.A. and Alemania are the nominee/alter egos of the Saengers."

■ On appeal, Alemania and AIDA do not contest the trial court's determinations that they are alter egos of the Saengers and that Saengers' "self dealing was done to create the illusion of third party ownership of the property." Instead, they argue that 26 USC § 6335 required that they be given notice of the seizure and sale, even though they were alter egos of the Saengers. In support of their argument that strict compliance with the notice requirements of § 6335 was required with respect to them, they rely on *Powelson v. United States*, 979 F2d 141 (9th Cir 1992), *cert den* 507 US 1029 (1993); *Goodwin v. United States*, 935 F2d 1061 (9th Cir 1991); and *Reece v. Scoggins*, 506 F2d 967 (5th Cir 1975). In each of those cases, the IRS failed to give the taxpayer notice that strictly complied with section 6335. Here, the taxpayers, Saengers, do not claim any irregularities in the manner in which *they* were served with notice, and in fact, it has previously been adjudicated that the notice requirements were satisfied. *Saenger v. United States*, 996 F2d 1227 (9th Cir

1993).[5] Also, the holdings in *Goodwin, Powelson* and *Reece* all differ from this case in another significant respect: None of them involved a contention by an alter ego of a taxpayer that the alter ego was also entitled to notice. Therefore, those cases are not controlling and are not helpful to our resolution of this case.

Defendants also rely heavily on the holding in *Valley Finance, Inc. v. United States*, 629 F2d 162 (DC Cir 1980), *cert den* 451 US 1018 (1981).[6] In that case, a corporation's assets were seized by the IRS to satisfy the taxes owed by the corporation's only stockholder. The corporation sued the United States for wrongful levy and to quiet title. 26 USC § 7426; 26 USC § 2410. The IRS maintained that the corporation was the alter ego of the taxpayer. The corporation contested that claim at trial and also contended that the IRS had failed to give notice to it of the taxpayer's deficiency as required by the federal code and the constitution. The District Court held for the government, concluding that there were no procedural or constitutional irregularities regarding notice. On appeal the judgments were affirmed.

Defendants rely on the following sentence in *Valley Finance* in support of their argument that they, as alter egos, were entitled to notice: "As the owner of property levied upon, [the corporation] *was* entitled to notice of the seizures themselves. 26 USC § 6335(a) (1976)." *Id.* at 170. (Emphasis in original.) However, that sentence must be read in context. The court continued:

> "Such notice, including a description of the property seized, protects *inter alia* the rights of innocent third parties. The requirement that such notice be 'as soon as practicable after seizure' suggests a desire to assure more immediate access to judicial review than may be otherwise available under the provisions governing notice of deficiency. Cf. 26 U.S.C. §§ 6861(b), 6213(a) (1976). We can find no indication in the

---

[5] The opinion in that case was not published, but under Ninth Circuit Rule 36-3, it may be cited when relevant "under the doctrines of law of the case, res judicata, or collateral estoppel." Additionally, in federal court, the Saengers asserted that they were the owners of the property.

[6] Defendants argue, *"Valley Finance* is arguably the most important and dispositive case in this appeal." We agree that the reasoning in *Valley Finance* is persuasive, but not in the manner suggested by defendants.

record that notice required under section 6335 was not received. Appellant, as plaintiff below, carried the burden of proving the Government's failure to follow prescribed statutory procedures. *Because this issue was not raised before either the District Court or this panel on appeal,* we must assume that [the corporation] received the notice to which it was lawfully entitled." *Id.* at 170. (Emphasis supplied.)

■     The court concluded that if the corporation was an alter ego of the taxpayer "its position [was] identical to [the taxpayer's]" and that it was required to raise any constitutional challenges in tax court. *Id.* at 171 n 17.[7] Earlier in the opinion, the court explained, regarding the notice of deficiency:

"The claim that [the corporation] also is entitled to notice of [the taxpayer's] deficiency must be rejected. The IRS has asserted that [the corporation], although a separate legal entity, is for these limited purposes simply an extension of [the taxpayer]. If, as the Government contends, [the corporation] is identified as [taxpayer's] alter ego, then [the corporation] possesses no separate statutory rights to additional notice. It is owed no separate notice of deficiency, because it has been adequately informed by virtue of the notice to the taxpayer. Under such circumstances, to require that the corporation be furnished with an identical 'ticket to the Tax Court' would be superfluous and unduly wasteful of both administrative and judicial resources. Neither the statute nor its legislative history support such a conclusion." *Id.* at 169. (Citations omitted.)

On the other hand, the court pointed out, if it were assumed that the corporation was not the alter ego of the taxpayer, the corporations had the opportunity for a hearing on the adequacy of notice in District Court in the wrongful levy action. The court explained:

"[The corporation] has insisted throughout these proceedings that it is *not* the delinquent taxpayer. As a third party challenging the Government's finding of a nexus between

---

[7] The court's reasoning with respect to the corporation's Fifth Amendment challenge also pertains in this case. Alemania and AIDA, as the Saengers' alter egos, occupy the same position as the Saengers. Because the Saengers, as owners of the property, received constitutionally adequate notice and opportunity to defend, so did their alter egos.

itself and [the taxpayer], its proper avenue of redress is in the District Court under section 7246. Nothing in that statutory provision prohibits or otherwise limits the right to bring an immediate action in order to contest the Government's levy. The fact that [the corporation] did not choose to act immediately, or to seek preliminary or emergency relief, cannot be construed as a bar to prompt judicial access. Because the statutory scheme affords ample and prompt hearing rights to affected third-party property holders, no constitutional problem arises." *Id.* at 170-71. (Citations omitted.)

We conclude that *Valley Finance* does not support the proposition that a taxpayer's alter ego is entitled to receive notice separate from and in addition to the adequate notice given to the taxpayer under section 6335. To the contrary, the case clearly supports the conclusion that, if the taxpayer received adequate notice under the statute, then the taxpayer's alter ego "stands in the shoes" of the taxpayer. Accordingly, when the IRS gave notice of the seizure and sale to the Saengers, that notice was also notice to Alemania and AIDA. The trial court did not err when it denied Alemania's and AIDA's motions.

Next, Saengers assign error to an order compelling discovery that directed them to sign a waiver that would have authorized the IRS to release their tax records to plaintiffs. Their entire argument on appeal is as follows:

"The Internal Revenue Code at 26 U.S.C. § 6103 provides for the nondisclosure of federal tax information. ORE 509 declares that '[a] public officer shall not be examined as to public records determined to be exempt from disclosure under ORS 192.501 to 192.505.' ORS 192.502(7) exempts '[a]ny public records or information the disclosure of which is prohibited by federal law or regulations.' "

Defendants fail to point out, however, that 26 USC § 6103(c) provides an exception to the rule that the IRS cannot release taxpayer records. That exception authorizes the IRS to "disclose the return of the taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a written request for or consent to such disclosure." In view of the exception, it would not be a violation of federal law for the IRS to release

defendants' tax information upon receipt of their written request. Therefore, the information would not be privileged under OEC 509 under those conditions, and defendants' argument fails. The trial court did not err in that regard.

■ Finally, all defendants assign error to the award of attorney fees to plaintiffs pursuant to ORCP 46 B(3) as a result of the Saengers' discovery violation. Alemania and AIDA point out that their records with IRS were not the subject of plaintiffs' motion and that they did not refuse to sign a waiver. Thus, they cannot be held directly liable for the Saengers' discovery violation. We agree, and accordingly, reverse the judgment of attorney fees with respect to them.

The Saengers point out that the only expenses allowed under ORCP 46 B(3) as sanctions are expenses "caused by the [discovery] failure." They note that the award of fees and costs amounts to more than $50,000 and that the cost bill presented to the court did not indicate whether those expenses were the direct result of the failure to provide discovery. Based on our review of the record, we agree with Saengers. We are unable to determine whether the cost bill reflects only those costs that are derivative of the discovery violation or the expenses for the entire case. Accordingly, we reverse the award of attorney fees in regard to the Saengers and remand to the trial court for further factual findings. On reconsideration, the court should enter judgment for the amount determined to have been caused by the discovery violation.

Attorney fee award against Alemania and A.I.D.A. reversed; attorney fee award against Saengers reversed and remanded for reconsideration; otherwise affirmed.